UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHN L. SCHUESSLER,           )
                              )   No. CV-07-0336-JPH
          Plaintiff,          )
                              )   ORDER GRANTING DEFENDANT'S
v.                            )   MOTION FOR SUMMARY JUDGMENT
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social        )
Security,                     )
                              )
          Defendant.          )
                              )

BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on May 19, 2008.  (Ct.
Rec. 15, 17).  Plaintiff John L. Schuessler ("Plaintiff") filed a
reply brief on May 12, 2008.  (Ct. Rec. 19).  Attorney Maureen
Rosette represents Plaintiff; Special Assistant United States
Attorney Daphne Banay represents the Commissioner of Social
Security ("Commissioner").  The parties have filed a consent to
proceed before a magistrate judge.  (Ct. Rec. 8).  After reviewing
the administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 17)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 15).

**JURISDICTION**

On February 6, 2004, Plaintiff filed applications for
Supplemental Security Income ("SSI") benefits and Disability
Insurance Benefits ("DIB"), alleging disability since September 1,

- 1 -

2002, due to depression, paranoia and 70% deafness in his left ear.  (Administrative Record ("AR") 100-102, 198, 414-416).  Plaintiff's applications for SSI and DIB were denied initially and on reconsideration.

On October 20, 2006, Plaintiff appeared before Administrative Law Judge ("ALJ") John Crickman, at which time testimony was taken from Plaintiff and medical expert Dr. Scott Mabee.  (AR 436-466).  A supplemental hearing was held on January 19, 2007, at which time testimony was taken from Plaintiff, medical expert Dr. Anthony Francis and vocational expert Debra Lapoint.  (AR 467-517).  On April 18, 2007, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 18-26).  The Appeals Council denied a request for review on September 14, 2007.  (AR 7-10).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on October 23, 2007.  (Ct. Rec. 2).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 36 years old on the date of the ALJ's decision, had completed the ninth grade and later obtained a GED, and has past work experience as a truss assembler, stone sawer, construction worker, deliverer, production assembler and electronics tester.  (AR 26, 100, 495-496, 497-498).  Plaintiff indicated on his disability report that he stopped working because he "was unable to concentrate and perform [his] duties as needed."  (AR 115).

At the administrative hearing held on October 20, 2006, Plaintiff agreed that he "fell off the wagon" at least once since filing for disability benefits, but had not used illegal drugs for at least one year. (AR 458). At the January 19, 2007 administrative hearing, medical expert Anthony Francis testified that while the March 2006 report of Plaintiff testing negative for drug usage shows that Plaintiff was apparently drug free on that date (AR 385), it followed that he should be functioning better if he continued to be drug free. (AR 481-483). Plaintiff testified at the January 19, 2007 hearing that it had been over a year since he last used illegal drugs and he was currently living in a clean and sober place. (AR 510-511).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past. If Plaintiff is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987). ///

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support

a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted).  "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the court considers the record as a whole, not just the
evidence supporting the decision of the Commissioner.  *Weetman v.
Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.
Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to
resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If
evidence supports more than one rational interpretation, the court
may not substitute its judgment for that of the Commissioner.
*Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579
(9th Cir. 1984).  Nevertheless, a decision supported by
substantial evidence will still be set aside if the proper legal
standards were not applied in weighing the evidence and making the
decision.  *Brawner v. Secretary of Health and Human Services*, 839
F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial
evidence to support the administrative findings, or if there is
conflicting evidence that will support a finding of either
disability or nondisability, the finding of the Commissioner is
conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.
1987).

**ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in
substantial gainful activity since the alleged onset of
disability, September 1, 2002.  (AR 20).  At step two, the ALJ
determined that Plaintiff has the following medically determinable

impairments: amphetamine dependence, possibly in early sustained or partial remission, based on self report; personality disorder, not otherwise specified ("NOS") with schizoid and antisocial features; schizotypal personality disorder; mild degenerative disk disease; and hepatitis C.  (AR 20).  However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that have significantly limited Plaintiff's ability to perform basic work-related activities for 12 consecutive months, and, therefore, Plaintiff does not have a severe impairment.  (AR 20-25).  The ALJ specifically determined that there is no evidence that Plaintiff has a severe mental impairment without substance abuse (AR 22) and that there is no evidence of a severe physical impairment (AR 24).  Based on the ALJ's review of the medical record and finding that Plaintiff does not have a severe mental or physical impairment, the ALJ concluded, at step two of the sequential evaluation process, that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 25-26).

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, Plaintiff argues that the ALJ erred by finding that he does not have a severe mental or physical impairment. This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

///

///

///

**DISCUSSION**

Plaintiff contends that the ALJ erred by concluding that he did not have severe mental or physical impairment. (Ct. Rec. 16 at 10-18). Plaintiff asserts that he provided ample evidence proving the existence of his severe physical and mental impairments. (Ct. Rec. 16 at 11-18). The Commissioner responds that the ALJ properly considered and addressed the medical evidence of record and properly found that Plaintiff did not have a severe impairment or combination of impairments. (Ct. Rec. 18 at 6-16).

Plaintiff has the burden of proving that he has a severe impairment at step two of the sequential evaluation process. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows that he has a severe impairment. 20 C.F.R. § 416.912(a). The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." S.S.R. 85-28; *see Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements

of step two, the Court must determine whether the ALJ had
substantial evidence to find that the record clearly established
that Plaintiff did not have a medically severe impairment.
*Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

### A. Physical Impairments

Here, the ALJ found that there is no evidence of a severe
physical impairment. (AR 24). The undersigned agrees.

First, with regard to Plaintiff's cursory argument claiming a
severe impairment based on hepatitis C (Ct. Rec. 16), the ALJ
noted that there was some reference to hepatitis C in the record,
but no observations of debilitating symptoms stemming therefrom.
(AR 25). While hepatitis C is mentioned in the record, Plaintiff
clearly failed to provide objective medical evidence from
acceptable medical sources to establish his hepatitis C
"significantly limited" his ability to perform basic work
activities. The ALJ thus properly found this impairment to be not
severe.

With regard to Plaintiff's back complaints, as noted by the
ALJ, Plaintiff's alleged back pain was first mentioned in the
record on June 24, 2004, nearly two years after his alleged onset
date (September 1, 2002). (AR 24, 282-283). David A. Hall, M.D.,
indicated that Plaintiff presented with complaints of back pain
and was "working on getting disability for this." (AR 282). At
the time of the visit, Plaintiff described having back pain "all
his life" and denied drug use. (AR 282). Dr. Hall diagnosed
"chronic back pain in a patient desiring disability for this."
(AR 283). X-rays of Plaintiff's spine taken that day were
negative. (AR 284).

On June 28, 2004, Plaintiff presented to the emergency room and complained of chronic low back pain that seemed to be intensifying. (AR 307). It was noted that Plaintiff was "in the process of obtaining disability for chronic back pain." (AR 307). He was diagnosed with chronic back pain with recent intensification; however, as noted by the ALJ, the physical examination revealed no adverse findings. (AR 24, 307).

Plaintiff became a regular emergency room patient in the summer of 2004, routinely complaining of low back and neck pain. (AR 307-319). On July 23, 2004, it was noted that "patient's presentation is worrisome for the possibility of drug seeking behavior." (AR 314). Plaintiff was advised at that time that he would no longer be prescribed pain medication for his subjective complaints. (AR 314). A lumbar spine MRI administered on July 27, 2004, was normal except for mild L4-S1 degenerative facet disease. (AR 320). A cervical spine MRI on July 30, 2004, was normal except for moderate to severe left C3-C4 and moderate bilateral C4-C5 foraminal narrowing. (AR 321-322). An August 3, 2004 CT of Plaintiff's cervical spine revealed "no acute changes, just some moderate to severe foramen narrowing that confirmed what he had been diagnosed with on the MRI." (AR 316, 323-324). Narcotic-seeking behavior was again mentioned. (AR 316). The ALJ noted that physical examinations in the emergency room elicited no objective symptoms, other than some tenderness. (AR 25, 307-319).

On October 6, 2004, Plaintiff was examined by George W. Bagby, M.D., relative to his neck and low back complaints. (AR 325-328). Dr. Bagby noted normal cervical spine views by x-ray and normal appearing lumbar spine by x-ray. (AR 327). For

purposes of the orthopedic evaluation, Dr. Bagby diagnosed cervical disc pathology with questionable neurological deficit and lumbar spine disc pathology without objective neurological deficit.  (*Id.*)  He indicated that, with the information at hand, Plaintiff appeared to have a marked impairment and the ability to perform only light work for a period of six months.[1]  (*Id.*)

At the administrative hearing on January 19, 2007, medical expert Dr. Anthony Francis testified that Plaintiff had issues with seeking narcotics and had a long history of drug use, mainly street drugs and amphetamine use.  (AR 474-479).  Dr. Francis opined that "we have a lot of problems here which are totally clouded by the drug use which is documented in several places." (AR 478).

With respect to Plaintiff's orthopedic or neurologic condition, Dr. Francis stated that the record reflected only a peripheral mention that Plaintiff may have radiculopathy and that the examining orthopedist, Dr. Bagby, indicated in a fairly extensive report that there was no clear radiculopathy.  (AR 479-480).  Dr. Francis testified that there was nothing in the record which would cause him to disagree with Dr. Bagby's findings.  (AR 479).  He stated that the record contained no clear documentation of any radiculopathy, and opined that, in the absence of any clear symptoms documented by a physician who is trained in this area, it

---

[1]"[A]n individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than **twelve** months."  42 U.S.C. § 1382c(a)(3)(A) (emphasis added).

was difficult to say whether Plaintiff meets or equals a Listings impairment from an orthopedic standpoint.  (AR 478-479).

Based on the foregoing, the substantial weight of the record evidence supports the ALJ's conclusion that Plaintiff's physical ability to do basic work activities is not "significantly limited."  As noted above, Plaintiff has the burden of proving that he has a severe impairment at step two of the sequential evaluation process and must furnish medical and other evidence that demonstrates he has a severe impairment.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912.  An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521, 416.921.  The evidence of record simply does not demonstrate that any physical ailment significantly restricted Plaintiff's ability to perform work for 12 consecutive months. Since Plaintiff failed to establish that he had a physical condition that significantly limits his ability to perform basic work activities, the ALJ did not err by finding no evidence of a severe physical impairment in this case.

**B.  Mental Impairments**

Plaintiff asserts that, from a psychological standpoint, he provided ample evidence consisting of signs, symptoms and laboratory findings proving the existence of a severe mental impairment.  (Ct. Rec. 16 at 15-18).  The undersigned does not agree.

The ALJ determined that there is no evidence that Plaintiff has a severe mental impairment without substance abuse.  (AR 22). The ALJ properly noted that prior to June of 2004, there were some

treatment notes indicating that Plaintiff had some mental health issues, but these notes were based entirely on Plaintiff's self-reports, and there are no other mental health reports until February of 2005. (AR 22, 239-249, 341-342). The February 2005 notes again contain only self-reporting. (AR 22, 341-342). Although Plaintiff provides a cursory argument that "the ALJ did not offer specific findings properly supported by the record in sufficient detail to reject Mr. Schuessler's symptom testimony" (Ct. Rec. 16 at 15), the undersigned finds that the ALJ provided sufficient rationale for concluding that Plaintiff's statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not entirely credible (AR 22).[2] Since Plaintiff was properly found not entirely credible, the ALJ appropriately accorded little weight to medical reports based on his subjective complaints.

On June 7, 2004, state agency reviewing psychologist, Maximo J. Callao, Ph.D., reviewed the record and completed a Psychiatric Review Technique form. (AR 267-280). Dr. Callao opined that there was insufficient evidence to make a finding regarding the severity of Plaintiff's impairments. (AR 267). On January 14, 2005, state agency reviewing psychologist, Sharon Underwood, Ph.D., reviewed the record and also indicated that there was insufficient evidence to make a finding regarding the severity of Plaintiff's impairments prior to January 9, 2003. (AR 291-304). Dr. Underwood determined that Plaintiff's possible depressive

---

[2]In addition to Dr. Severinghaus' diagnosis of malingering, over and above existing issues (AR 24, 382), the ALJ noted Plaintiff's inconsistent reports of drug use (AR 22), medical reports noting concerns about Plaintiff's drug seeking behavior (AR 25), and objective medical evidence inconsistent with Plaintiff's allegations of limitations (AR 24-25).

disorder, polysubstance dependence, in partial remission, and probable antisocial personality disorder resulted in, at most, mild functional limitations.  (AR 294-301).  The ALJ accorded significant weight to these assessments.  (AR 24).

On November 30, 2004, Plaintiff underwent a psychiatric evaluation with Paul Michels, M.D.  (AR 285-290).  Dr. Michels diagnosed Plaintiff with polysubstance dependence in reported partial remission, possible depressive disorder, NOS, and probable antisocial personality disorder and gave Plaintiff a Global Assessment of Functioning ("GAF") score of 65.[3]  (AR 289).  As noted by the ALJ, Dr. Michels indicated that Plaintiff was not involved with mental health treatment and, when discussing employment difficulties, did not mention depression (or back pain) as a factor.  (AR 23, 289-290).  Plaintiff reported his problems with employment were due to seasonal layoffs, drug problems and not showing up for work.  (AR 23, 290).  Dr. Michels opined that Plaintiff's substance abuse could be contributing to his subjective sense of depression.  (AR 23, 290).  Still, Dr. Michels found that Plaintiff's concentration, persistence and pace were good and that Plaintiff was capable of understanding, remembering and carrying out complex and simple tasks.  (Id.)

On February 28, 2006, Plaintiff was examined by John F. McRae, Ph.D.  (AR 334-340).  Dr. McRae indicated that dates of reported drug use did not coincide with the information provided by Plaintiff at the time of the examination; therefore, there was

---

[3]A GAF of 70-61 is characterized as:  "Some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987).

some question as to Plaintiff's credibility on reporting of his
drug use.  (AR 335).  Furthermore, Dr. McRae indicated Plaintiff
had a "fixed stare" that could be a reaction to some type of
medication or pills that Plaintiff was taking.  (AR 335).  Dr.
McRae noted that it was "very unlikely one could expect that he is
free of drugs as he reports it without having any benefit of
treatment."  (AR 335).  Dr. McRae opined that it was likely, but
not certain, that Plaintiff was using, and that the drug use
influenced symptoms that Plaintiff described.  (AR 336).
Nevertheless, Dr. McRae felt that, despite those symptoms,
Plaintiff's cognitive and social functioning would not preclude
him from carrying out simple repetitive work tasks away from
others.  (AR 336).

On June 20, 2006, Plaintiff was examined by John Arnold,
Ph.D.  (AR 367-376).  Dr. Arnold indicated concerns similar to
those of Dr. McRae; specifically, whether Plaintiff was actively
using drugs, given Plaintiff had not had formal treatment for his
addiction in the past and was opting to camp out rather than
access community based homeless services.  (AR 368).  Dr. Arnold
gave a rule out diagnosis of active substance use, diagnosed
schizotypal personality disorder with dependent and depressive
features and gave a GAF score of 55.[4]

While Dr. Arnold noted on the psychological/psychiatric
evaluation form that Plaintiff had marked and moderate
limitations, Dr. Arnold indicated there was no indication of

---

[4]A GAF of 60-51 reflects: Moderate symptoms or moderate
difficulty in social, occupational, or school functioning.  *See*
DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

alcohol or drug abuse and that the limitations were expected to last no longer than six months.  (AR 373-376).  Dr. Arnold's form opinions were thus not consistent with his narrative report, as noted by the ALJ (AR 23), and assessed limitations that would not meet the duration requirements of the Act (one year), instead finding they were only expected to last a maximum of six months (AR 376).  42 U.S.C. § 1382c(a)(3)(A).

Despite the fact that the three examining medical professionals, Drs. Michels, McRae and Arnold, each indicated that substance abuse may be a contributing factor to Plaintiff's impairments, they did not assess Plaintiff's functioning abilities absent substance abuse.  (AR 23).  Therefore, the ALJ appropriately discounted the assessments given by these three examining medical professionals.  (AR 23).

At the October 20, 2006 administrative hearing, W. Scott Mabee, Ph.D., opined that the quality of the assessments of Drs. Michels, McRae and Arnold was insufficient to make more than a brief diagnosis.  (AR 23, 445).  Dr. Mabee indicated that all three of the consultative examinations noted a possible substance abuse problem that would interfere with Plaintiff's functioning. (AR 447).  Dr. Mabee indicated that solid cognitive testing needed to be performed in order to assess Plaintiff's concentration, persistence and pace.  (AR 23, 447-448).  The ALJ thus requested another consultative examination to address the issues raised by Dr. Mabee.  (AR 23).

On November 20, 2006, Plaintiff was examined by John B. Severinghaus, Ph.D.  (AR 378-384).  Dr. Severinghaus noted that "[r]egarding psychiatric issues, there is consistent opinion

across clinicians of a history of substance abuse, particularly street drugs and methamphetamines, with minimal alcohol abuse. There is also consistent opinion that [Plaintiff] has not achieved cessation of drug use and that unreported use, or under-reported use, may be continuing." (AR 378). Dr. Severinghaus discounted reports of psychosis including auditory hallucinations, bipolar disorder and clinical depression as unsupported by the record evidence (AR 378), and noted that Plaintiff alleged auditory hallucinations commenced when he was using methamphetamine (AR 380). Dr. Severinghaus reported that Plaintiff "acknowledges starting to hear voices three years ago, while 'into meth heavy at the time.'" (AR 381).

Plaintiff's responses on the cognitive mental status exam did not indicate significant deficits or deficits strongly suggestive of organic pathology. (Ar 381). Dr. Severinghaus noted that Plaintiff's answers could also reflect evasiveness or deliberate underperformance. (AR 381). While Plaintiff indicated he last used street drugs 18 months ago, Dr. Severinghaus related that he could not rule out continued use/abuse. (AR 381). Dr. Severinghaus diagnosed malingering, over and above existing issues, provisional, but with a high index suspicion; amphetamine dependence, possibly in early sustained or partial remission, based on self report; personality disorder, NOS, with schizoid and antisocial features; schizotypal personality disorder; rule out borderline intellectual functioning; and history of some disc disease. (AR 382). Dr. Severinghaus gave Plaintiff a GAF score of 42-52 and indicated that the "lower rating reflects functioning under the influence of street drugs." (AR 382). He stated that

Plaintiff's current psychological functioning was probably fairly
well and that while testing suggested exaggeration of problems,
existing records plus Plaintiff's overall presentation suggested
chronic characterological and substance abuse problems. (AR 382).

Dr. Severinghaus opined that Plaintiff has the ability to
perform at least some light activities. (AR 382). He found
Plaintiff's memory functioning, attention and concentration, and
basic problem solving did not appear to be significantly impaired,
interpersonal functioning remained fairly limited, yet limited
interactions did not appear to be precluded, and pace and
persistence did not appear impaired. (AR 382). He noted there
were no substantial limitations in activities of daily living or
in engagement in brief social contact. (AR 382).

Consistent with the ALJ's determination in this case, the
weight of the record evidence, as described above, demonstrates
that Plaintiff's mental problems are not sufficient to pass the de
minimis threshold of step two of the sequential evaluation
process. *See, Smolen,* 80 F.3d at 1290. The record exhibits
Plaintiff's long history of drug use. As stated by Dr. Francis,
"we have a lot of problems here which are totally clouded by the
drug use which is documented in several places." (AR 478). The
ALJ properly discounted the assessments given by the three
examining medical professionals, Drs. Michels, McRae and Arnold,
because although all three noted a possible substance use problem
that would interfere with Plaintiff's functioning, they each
failed to assess Plaintiff's functioning abilities absent
substance abuse. (AR 23). As opined by Dr. Severinghaus,
Plaintiff's overall functioning is fairly well; however, when

Plaintiff is under the influence of drugs his functioning probably declines significantly.  (AR 382).  The record is simply devoid of any evidence that Plaintiff has a severe mental impairment absent substance abuse.  Plaintiff has failed in his burden to show that, without drug use, he has a mental condition that significantly limits his ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Accordingly, the ALJ appropriately concluded that there is no evidence of a severe mental impairment in this case.

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, the Court finds that the ALJ's decision is supported by substantial evidence and free of legal error.  Plaintiff is thus not disabled within the meaning of the Social Security Act.

**IT IS ORDERED**:

1.  Plaintiff's Motion for Summary Judgment (**Ct. Rec. 15**) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (**Ct. Rec. 17**) is **GRANTED**.

3.  The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**IT IS SO ORDERED.**

**DATED** this ___3rd___ day of June, 2008.

                              *S/James P. Hutton*
                         JAMES P. HUTTON
                    UNITED STATES MAGISTRATE JUDGE